The clerk will call the next case. 3-15-0274, People of the State of Illinois, Epilene, by Justin Nicolosi v. Michael Williams, appellant by Justin Schwartz. Mr. Schwartz, you may proceed. Thank you, Your Honors. This case involves more facts and issues than the previous ones you've heard, but I will try to hit on the main ones. The first and most central claim is the inspiciency of the evidence against the manifest weight of the evidence claim in the alternative. I'll be making those arguments in the alternative without, hopefully, having to refer to each standard. We have a case here in which the weight of the evidence and the inspiciency of the evidence is quite clear. We have four to five witnesses who consistently tell a story on which somebody other than Michael Williams shot Eric Boundary. He was approached by a person wearing black, nobody knew who he was, and he went out of the way. Against this, the state has three objections. The first is that it's curious that they didn't come forward. I submit that it's not particularly curious. For example, Eric Boundary is a self-admitted member of a gang. Naturally, he doesn't want to talk to the cops. And other people in the community are likely to have had difficult experiences with the police. But regardless, curious doesn't mean incredible. It doesn't even mean unlikely. It's just perhaps strange. That's all the argument the state has. The best the state could do at trial was to bring up two points. The first one was one of the witnesses said a hat went in her hoodie in a circumstance where everybody except the state's chief witness, Scott Lang, admits that it was too dark for anyone to see anything. That's not a significant impeachment. A second point was that one of the witnesses stumbled and said she saw nothing, and then when the trial counsel said, could you please explain, she said, I'm sorry, I was nervous. Well, being on trial makes you nervous. And then she explained what she did see. Even if you drop those, you still have three witnesses still telling the same story. But let's now look at the state's case, which no rational person could believe, and which is clearly belief in which is probably erroneous and wholly unwarranted. Their primary witness is Scott Lang. Scott Lang impeached himself at trial repeatedly, five times about the gun, four times at trial, once before, within a couple of pages of the evidence. I could give you the citations, but your honors have the record not read so you can see it at page 23 of the appellant's brief. He saw, he didn't see it, he saw it lacked because of where he was standing, he wasn't sure what it was, he didn't see anything. This is not somebody you can believe. And to add to his incredibility, he lied about the light. He said, oh, I can see it because it had a street light overhead, except it's not in the picture. When this was pointed out to him, he said, oh, well, it's ambient lighting from a window of an apartment building next door. And that's his basis for claiming from what he saw from 20 feet away. And he lied about his relationships between Michael Williams and Eric Brownlee. He said that Brownlee was mocking Williams, but he told the police everybody was good friends, and when it was pointed out, he vaguely recalled that at trial. Man's a liar when the truth is not in him. And it's worse than that. He's a drug addict. He's been on, in the record, drug treatment, but apparently it didn't stick because Eric Brownlee testified and nobody objected that he'd been on various drugs that Brownlee had gotten him before they came to the parking lot. And as you know, the law is quite clear that the testimony of a drug addict is essentially highly suspect because these people are notorious liars, repeated language in the case law. And it gets worse than that because one of the drugs that he was on, the testimony is, was Ritalin. And this actually also goes to the ineffective assistance argument. Trial counsel did not bother to look up what Ritalin is. Ritalin is a stimulant which, if improperly used according to the manufacturer and the FDA, causes hallucinations and psychotic states. And there's no way that leaving that out could possibly be a trial strategy. So there's evidence, refuted by nothing but his own word, and his own word is worthless, that he was on a drug that causes people to see things that aren't there. Plus he's a drug addict. Is there evidence of how much Ritalin was in his system at the time? Nobody attested because apparently this wasn't something that they bothered to follow up on. But, you know, could have been a lot, could have been a little. The second major witness is the victim, Eric Browner. And here the state's attitude towards his testimony is very interesting. They cherry pick the one statement that he makes that's inculpatory. He made five statements, I believe. They would have me believe that he is only to be believed when he said that William shot him on his third interview in the hospital, and he's not to be believed at any other time. When he was heavily medicated, half a month after being shot, the detective said, well, he didn't seem heavily medicated to me. The detective is not a medical professional, and nothing in the record indicates the detective bothered to find out whether Mr. Brownlee was so medicated that he could talk. He seemed to adhere to him. Well, yeah, sure, he's a great person to tell. We have actual contrary evidence. Mr. Brownlee himself says that he was heavily medicated and unable to understand what he was saying. Mr. Brownlee would quote, we're not supposed to believe that. We're not supposed to believe that he denied it the first two times when they showed up at the hospital. We're not supposed to believe that he denied that he didn't shoot Michael Williams, when Michael Williams didn't shoot him, when he went in to tell the police, oh, I made a mistake. He told an incoherent story, which he admits he's emotional. It's an emotional situation. And I don't know. It makes no sense. But nonetheless, the testimony is clear and consistent with everything else he said except one thing. And, of course, there is a trial where he denied shooting Michael Williams. You're only supposed to believe Michael Williams. The jury was only supposed to believe him on one point. No rational jury could reject everything else he said and accept that one point when there's evidence that when he made that statement, he was drugged to the point of incapacity. I also want to call your attention to the one crucial piece of evidence that I think destroys the entire prosecution case. And this is the absence of the evidence of the bottle. The fight was supposedly occasioned, a hypothetical fight, between Michael Williams and Eric Brownlee, when Brownlee took a bottle of tequila that Michael Williams was drinking and took a sip from it to diss him, according to the prosecutor's summation. And then the bottle fell and dropped. The problem is that there's no bottle. In the picture that was taken a few minutes after and testified to as being true, an accurate representation of the scene, there is no bottle. No one saw a bottle. No one found a bottle. No one found bottle shards. No one found any tequila smell or alcohol smell. Now, the state's interesting reply here on appeal is nobody looked for a bottle. This is not something you'd have to look for. This is something that you would have to avoid stepping on so you wouldn't cut your foot. The missing bottle shows that Eric Brownlee was, in fact, not telling the truth. Now, I'm not saying he was lying. I do say that he was drugged to incapacity when he told that story. There was no bottle. We know there was no bottle. No one cleaned up the bottle and left the shell. With regard to the testimony of Shirley McNeil, Eric's girlfriend, who saw things from 50 yards away through a window or heard things, and Wallace Jordan, the only relevant piece of evidence, really, is the alleged threat that Michael Williams is supposed to have made, I'm going to kill you. Except that there's no legal evidence that a threat made after a crime that was never carried out is evidence that you committed a crime before you made the threat, a different crime. In fact, the state says it's relevant, but what it's relevant to is that he didn't do it. Because if you don't carry out your threats, why would you have committed the crime in the first place? So we have a different explanation. Someone much closer, not 50 feet away, not through a window, not through the window of a car as Wallace Jordan was also 50 feet away, but someone two feet away heard Michael Williams say, what are you doing, you could have killed me, I was trying to save you, which was in fact Eric Brownlee's story later on. And it's easy to see how people could have gotten unclear 50 yards away through sound muffling material about what was being said. Notice also there is an important inconsistency. McNeil made a, testified that she saw a gun, which she protracted, in Eric Brownlee's hand, but she also testified it was too dark to see who did it, and everyone else testified it was too dark to see anything. And Wallace Jordan, who was 50 feet away with his headlights dead on Michael Williams, he saw no gun, he saw Michael pointing at Eric Brownlee. That's a summation of the evidence. It's a mystery to me how the jury could possibly have convicted on that evidence. Testimony of a known liar, testimony of somebody who, except when completely drugged, repeatedly testified that he was not shot by Michael Williams. Contrary testimony that somebody else shot him. And the key missing bottle is simply not there that would have to have been there if Eric Brownlee's story and the prosecution's theory was true. Okay, very briefly, it was clearly error to exclude the affidavit. Other sanctions were available and preferred and possible. They could have continued it, they could have held the witnesses as material witnesses, they could have taken the other witnesses first while they called in the notary. With regard to the expert, again, it's clear error. Experts can testify to matters of common knowledge, but the jury never heard how many GSR particles would have been left on a shooter's hand against the pure speculation admittedly by the state of the judge that maybe Michael, if he shot Eric, wiped his hand. No evidence to that effect. Well, wasn't that issue an issue of the qualifications of the witness and the basis for his... If you read the record, Your Honor, you will see that the judge never says that the expert was not qualified. He says he doesn't understand his testimony. He didn't say, no, not qualified, can't even bring this up. He said it won't be helpful because I don't understand it. Apparently the judge doesn't understand it. Simple arithmetic, which it really is. Finally, there's the ineffective... Actually, no, fine. There's the ineffective assistance counsel. The Batson argument, the single black juror was excused. The argument made in post-trial hearings is not a substitute for a Batson hearing made at trial. The Seventh Circuit said that's highly relevant to racial discrimination and everyone knows here that one racially motivated strike is too many. Finally, with regard to the plain error issue, the prosecution's repeated argument that the testimony was rehearsed. The state's response to this is, well, I took that back. They said it wasn't consistent. If you look at the record, you will see that the state, every time it brings this up, cites the inconsistencies as evidence of rehearsal. Three times. Plus, she forgot the story he was going to tell. He didn't remember what he was supposed to have said. So this is clearly a violation of the due process because it shifts the burden of proof. Or at very least, it's an improper comment which calls for reversal or a new trial. And on that, I reserve the rest of my time for rebuttal. Thank you. Thank you, Mr. Schwartz. Mr. Nicolosi. Good morning, Your Honors. May it please the Court. Counsel, regarding the first issue, the sufficiency of the evidence, I think it's important to stress what the standard of review is at this point. Considering the evidence in the light most favorable to the prosecution, could any rational jury have convicted the defendant of the charges in question? I think that needs to be always on our minds as we talk about the evidence because I think counsel may have been veering into retrial type of territory in considering the credibility and weighing and this and that. And that's, of course, the province of the trier of fact in this case, which is the jury. The jury heard all the evidence and decided to convict, that the evidence was sufficient to convict beyond a reasonable doubt, and the people would submit that the jury was not irrational in so doing. We had one witness, Scott Lang, who was very clear and very certain that the defendant shot Eric Brownlee in the leg. He testified of this argument that Brownlee was making fun of the defendant. Brownlee left, came back. The two argued.  He was very clear. He never wavered on this point. And one thing he was also clear about is that he wasn't doing drugs that night. He said he was drinking, but that he wasn't doing drugs. Brownlee mentioned something later about Lang taking Ritalin, as counsel mentioned, and I'm just going to kind of veer because I think the issues are kind of related, whether or not counsel was ineffective for failing to investigate and present evidence about Ritalin and its effect on people. Considering Lang's testimony, the people would submit that there was no opportunity to submit any evidence about Ritalin, because, again, Lang said he didn't take drugs. So I don't think by having another witness testify that, yeah, Lang was taking drugs, that can't possibly open the door for any and all evidence in the hopes of tarnishing another witness's credibility. There's just no case that supports such an argument. Can we turn to, I have a couple of questions, not regarding the sufficiency, but the first one is regarding the affidavit that was presented from Mr. Williams' wife to defense counsel right before the beginning of the trial. Reportedly it was signed by Mr. Lang. And I know that even though the court entered it into evidence, he said neither party could ask Lang about that. Was it rationale because he couldn't verify it, or was that just purely a sanction because it wasn't turned over sooner? Yes, the second one. It was more of a discovery violation. That's why the judge excluded it. It wasn't based on its foundation. They never got into that issue. And the people, as I argued in my brief... Couldn't they have just called him and verified the fact that he had signed that? Certainly they could have. And as I conceded in my brief, the judge didn't consider any different alternatives, and that's certainly not a point in our favor. How does that help us find the truth? If the whole reason that we have a trial is to find truth, how does not trying to... When you have a witness that is there, is available, and you have an affidavit that this witness may have signed, and the judge says, I'm not going to allow it because I don't know if it's true, and I'm going to do it because you didn't turn it in on time, and that's your punishment, how does that help us find the truth? Your Honor, I think the issue is a little different than that. Number one, Lange actually testified that he never changed his story. That was his actual testimony. Therefore, I mean, we could, of course, draw the line. If he didn't change his testimony, then he probably didn't... Or change his story, I'm sorry. If he never changed his story, then he probably didn't write an affidavit retracting everything he said earlier and at trial. But more importantly than that, there's procedural rules and discovery rules for a reason, and one of the main purposes of discovery is to prevent surprise and to prevent one side from getting an unfair advantage. The ridiculously dubious nature of the production of this document, I think, justified the judge's decision to exclude it. There's enormous prejudice to the state at this point because, number one, they were totally unprepared to investigate. They hadn't been able to investigate this document. That would have probably involved interviewing Lange again, interviewing the defendant's wife again, probably talking to somebody who might have notarized this, trying to figure out whether or not there was any foundation for this document. Number two, as the record... Couldn't they have any foundation? Couldn't they have just asked Lange, did you sign this? Is this your signature? Sure. Of course they could have, but that doesn't mean that this is reversible error because, again, as I argued, the judge rejected this document on discovery grounds, and I don't think there can be any argument that there was bad faith, that there was not bad faith in the production of this document. This was produced right after the jury was impaneled and right before opening statements, and the defendant's wife just happens to magically come up with this document. I don't think there's any question that she was intending to surprise the state and hamper their case at that point in time. Why wouldn't you bring it before trial or the day before or a month before? I think... Was there an offer of proof? No. No, the judge didn't let it get that far. No. Well, did somebody ask to make an offer of proof? I think the defense probably did. I don't remember specifically, but yeah. Well, that's kind of important because if they asked to make an offer of proof and that was rejected and denied, you can't deny an offer of proof. So if there was a demand for an offer of proof, in other words, I'm going to ask this witness, because we sit here now, and we don't know whether he signed it or not. Sure, we don't. But if defense counsel said, Judge, I want to make an offer of proof here for this witness and this affidavit, and the judge says no, you can't accept that. I understand, Your Honor. But, again, I'm going to stick to my argument that this was based on discovery principles that he excluded this document. And I think that the record is clear that the state had a very hard time obtaining witnesses to appear at trial. Besides the point, if a judge rules some way and you're thinking, gee, he's wrong, I want to get this in there, so you protect the record by making an offer of proof. Okay, the judge wants to make an offer of proof so the appellate court can see what's happening. And so my question is, even if the judge says I'm not going to let you use that, after the judge made that ruling, did the defense counsel make a demand for an offer of proof? I think he did. But, again, I don't remember. I don't remember the specifics of it. That's not what I focused on in my brief. I don't defend it. I made the argument on appeal that Lange was excused after his testimony. And I think the document was in some way, shape, or form discussed, I believe, the morning after. Again, it's been a while since I read the record. I don't recall. But I understand your concern, Your Honor. I can't specifically address that issue at this point because I just don't remember. My second question goes to the testimony about gunshot residue. My understanding is that the judge didn't say that this guy is not qualified, Mr. Howard isn't qualified to give this testimony. Didn't he say that it wouldn't be helpful? Yes. And was that something? Did he specifically find that knowledge of gunshot residue is something that anybody, is it within general knowledge, or I'm just trying to figure out why he felt that it was not an issue or something that was not going to be relevant, appropriate in this case. Yeah. Your Honor, the judge excluded that so-called expert because he just didn't think the jury needed any help in understanding that a gun fired should have left residue but didn't in this case. And as I stressed in my brief, I think the parties' stipulation is pretty telling in this case. The parties stipulated that at 11.48 p.m. the defendant was submitted, subjected to a gunshot residue test and nothing was discovered. And the fact that nothing was discovered, I think the reason that the parties stipulated that is kind of to inform the jury that there probably should have been gunshot residue but wasn't. There wasn't in this case and that should stand on its own. And the judge, the reason, part of the reason besides that that he excluded this expert is because there was that gap between the shooting at approximately 10 p.m. and the test at 11.48 p.m. That, of course, is a long period of time with which somebody could wash their hands repeatedly or wipe them down or, of course, do anything to remove any gunshot residue from their hands. So even if Howard was allowed to... Are these protocols, my understanding is that the testimony of the experts of the... He would say that it would not be limited to your hands, that these particles would have to be... They would be spread all over your hands, body, clothing or whatever. And I know that he could have washed his hands. Is there evidence that his clothes were changed or anything or any reason that none of this testimony would have been probative? Your Honor, there was no testimony that his clothes were changed. I think he was wearing the same thing when he was arrested at 11.15 or something like that. But I think this kind of veers into the qualifications of this witness, whether or not the judge specifically excluded him because of his qualifications. I certainly think he could have because I don't see how this man was an expert in any way, shape or form. He was an attorney like me. He focused solely on this Czech Republic article, which didn't even say anything about gunshot residue on somebody's hands or clothing. All that article was about was estimating or calculating how many unique particles are spread in the air. That has nothing to do with whether or not stuff is going to be on his clothes or on his hands or anything like that. I think any science in this case that this supposed expert was attempting to present was just junk. I think he would have been properly excluded on that basis, but much more importantly, he was properly excluded because there's a lot of time between the shooting and the test in this case that the defendant could have done any number of things to remove whatever type of residue might have been on his person. So I think the judge did not abuse his discretion in excluding that expert, supposed expert. People would stand on a brief regarding the ineffective assistance of counsel issues and whether or not the judge committed a plain error. To some, the people would submit that the jury's finding was proper in this case. They were not irrational in concluding that the testimony of Lange plus Brownlee's story to the detective in the hospital admitting that the defendant was the one who shot him, that that was sufficient evidence to support the finding in this case. The people would also submit that the judge didn't abuse his discretion in excluding that affidavit because, again, there was some very significant prejudice to the state by allowing this document at that particular time and bad faith was, I think, certainly evident in this case. So for those arguments and for those reasons and everything else in my brief, the people would request that this court affirm the jury's verdict in this case. If there are any other questions, I'd be happy to answer them. Thank you, Mr. McCloskey. Mr. Schwartz? Thank you, Your Honors. Before we get started, do you know the answer to that question? After the judge says, I'm not going to use the affidavit. There's an extensive discussion in the record. Did the defense counsel make a demand to make an offer of proof? Yes. He was having Mr. Lange on the stand. They were standing there. The jury was either out of the room or out of hearing. And he said, well, you can ask him. And the judge wavers back and forth. Well, maybe I'll let you give it a whirl, he says. And then he doesn't. He doesn't ask or he doesn't give him a chance. The defense counsel didn't ask? The defense counsel asked. The judge didn't give Mr. Lange a chance. Even after saying, well, maybe I'll let you give it a whirl. That is the defense counsel by saying, I'll ask Lange. I mean, he says, what's your foundation? And he says, what would you do if he says no? He says, well, I'll stand on what we say. I mean, this is what I've got. The judge never bothered to ask him, even though. Well, the judge isn't the inquisitor. I mean, when this witness is on the stand, the defense counsel will go up and say, here, I'm going to show you what's been marked as defendant's exhibit, whatever. Do you recognize that? And is that your signature? The judge forbade him to ask about it. He was only able to argue with the judge about whether he could even ask questions. But he wouldn't let him ask the question even with the jury out? Yes. He said, I want to ask the question to the jury. Read the record yourself, Your Honor. It's the relevant portions are cited in my brief. And then you can go back and look at the record. It's a bit of a mess, because the judge is reasonably built with this. And with regard to the expert, it's quite confused. But yeah, the defense asked to be able, you know, let's ask him. He's right here. And the judge would not, first, after saying, well, maybe, said no and excused him, saying, well, maybe you can recall him. But by that time, it was too late. With regard to the testimony about the gunshot residue, the state here repeatedly questions the unquestioned qualifications. The state conceded. The judge did not deny that the expert was qualified. He said he was a lawyer and a gunsmith who read an article from Czechoslovakia. He's been admitted as an expert in gunshot residue in a whole bunch of cases. And I don't understand why the fact that he's published in an internationally peer-reviewed journal is supposed to count against him. And what the article testified is that the article that he based on indicated was that if he fired a gun, if Michael Williams had fired a gun or anybody, it produced 20,000 particles that would spread hither and yon all over the place. The judge speculated, with no evidence, that he could have washed his hands or changed his clothes or something. This is cross-examination material, Your Honor. I mean, the judge should have said, yeah, let him on. Let the prosecution take him to pieces. How is it relevant? Because it doesn't matter how many particles, 2,005 million, the evidence, the stipulation was nothing on his hands. So it's really irrelevant. You may interrupt me. It's very irrelevant how many numbers of particles. The fact was stipulated to zero on his hands. So I fail to see how there's any harm to your client by omitting that testimony because I do share the judge's view that it's not really relevant. Well, the view of the judge and the prosecution seemed to be that if he fired a gun, there would have been particles on his hands. So if the expert was being offered to testify that particles can be washed off, something like that, but two particles found on his hand, then it might be relevant for the expert to say, well, 5 million particles are discharged in 2,000, but only two landed. That's got to be over. But here, no particles on his hands. So I just don't see the relevance of why it was. No, the expert's specific opinion was that the chances were 20,000 to 1. That's the number of particles that should have been on him if he fired a gun. And if he had testified to that and jury had believed that that was the case, then they would believe that he hadn't fired a gun, and therefore he hadn't fired a gun in Eric Williams. I would say that that's relevant. One minute, please. Okay, very briefly, with regard to Lange's veracity, the fact that he's certain doesn't make any difference since he's a liar. And we know he's a liar. He's a proven liar, even on his own terms of trial and his pretrial statement. And so his testimony that he only drank beer is worthless. With regard to the opportunity to get evidence about Ritalin, sure there was opportunity. Eric Brownlee testified that he had taken Ritalin. So defense counsel should have researched Ritalin and prepared an argument with it. That's an opportunity. With regard to the affidavit and the sanctions, the prejudice to the state is non-existent. The judge had lots of other things that he could have done, which I mentioned in my brief and here. He could have let the other witnesses go first. He could have continued the trial. It's annoying, but we're interested in the truth, and a man's life is at stake. I mean, 18 years of his life. And he could have done lots of other things other than say no. Not least of which is that he could have asked Mr. Lang, hey, did you sign this? He had the opportunity, he was right there. He could have said no, and then that would have left the defense wherever the defense would have been, but there was no chance for him to do that. And with that, Mr. Williams stands on his brief, my brief. And unless you have further questions, I think we'll thank you, Your Honor. Thank you. Thank you both for your arguments here today. This matter will be taken under advisement, and a written decision will be issued to you as soon as possible. And right now, it will stand in recess until 1 p.m.